**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DIANE MULLINS,

                CASE NO. 04-72965
   Plaintiff,           HON. LAWRENCE P. ZATKOFF

v.

JOHN E. POTTER, Postmaster General
United States Postal Service,

   Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 28, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant Post Office's Motion to Dismiss or, in the alternative, for Summary Judgment.  Plaintiff has responded and Defendant has replied to the response.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

Plaintiff is currently a part-time flexible (PTF) window clerk at the Plymouth, Michigan Post Office. Plaintiff began working for the Post Office in 1994, and worked at the Ann Arbor Post Office from 1994-1997. From 1998 to the present, Plaintiff has worked at the Plymouth Post Office.

In October 1998, Plaintiff began working at the Plymouth Post Office as a PTF distribution clerk.[1] Her main responsibilities included breaking down and sorting incoming mail. During December of 1998, Plaintiff was trained as a window clerk. Upon completion of her training, Plaintiff worked either as a window clerk or as a distribution clerk depending on which role was needed of her.

In 1999, Plaintiff was trained to work as a 204(B) supervisor. A 204(B) is a temporary supervisory position which is appointed by management for a particular period of time. Plaintiff has served as a 204(B) for periods as short as a few days, and for periods as long as several months. *See* Plaintiff's Brief, at 2.

During the Spring of 2000, Plaintiff began a romantic relationship with a fellow Post Office employee, David Mullins. Mullins was the Station Manager at the Penniman Office, part of the Plymouth Post Office.

In July of 2001, Deborah Darcy became the Officer-in-Charge (OIC) of the Plymouth Post Office. Plaintiff alleges that Darcy told Plaintiff that employees were complaining about favoritism due to Plaintiff's relationship with Mullins. *See* Plaintiff's Brief, at 2. Darcy informed Plaintiff that if she wanted to remain a 204(B), she would have to find another office. On or about September 30, 2001, Darcy offered to transfer Plaintiff to either Ann Arbor or Livonia. Plaintiff turned down both

---

[1] At the time, Plaintiff's name was Diane Slavin.

offers and wanted to remain at the Plymouth office.

On October 6, 2001, Darcy removed Plaintiff from the 204(B) position and replaced her with Kathy Kruzell, a Post Office employee with twenty years experience. In addition to Kruzell's experience, three of the regular supervisors had expressed a preference for Kruzell. *See* Defendant's Brief, at 3.

On October 11, 2001, Plaintiff met with an Equal Employment Office (EEO) Counselor and alleged that Darcy had discriminated against her because Plaintiff was engaged to a postal employee. Thereafter, Plaintiff filed an EEO complaint alleging harassment and discrimination against Darcy and union steward Donald Oziemski. By her EEO complaint, Plaintiff alleged that Oziemski was discriminating against her "by making snide comments and banning her from the use of a particular bathroom and parking lot." Plaintiff's Brief, at 3.

Plaintiff married David Mullins on November 11, 2001. On December 11, 2001, the EEO interviewed Darcy regarding Plaintiff's complaint. Darcy stated that employees were complaining about Plaintiff receiving favoritism due to her relationship with Mullins.

On January 2, 2002, Darcy issued a notice of removal to Plaintiff, informing her that the Post Office was going to terminate her employment in thirty days. The justification for the termination was a discrepancy on Plaintiff's 1998 job application. The application indicated that Plaintiff had never been fired from any job, but Plaintiff's employment file indicated that Plaintiff had been fired from the Ann Arbor Post Office in 1997.

The discrepancy was the result on Plaintiff's 1997 resignation from the Ann Arbor Post Office, which the Post Office had initially characterized as a termination. After her departure in 1997, Plaintiff filed a grievance with her union, and the parties reached a settlement where Plaintiff's

3

file would show that she had resigned from the Ann Arbor Office. Despite the settlement, the Post Office failed to correct Plaintiff's personnel file, thus creating the discrepancy discovered by Darcy in 2002.

Once Plaintiff was able to explain the discrepancy in her personnel file, the Plymouth Post Office revoked her removal notice. Plaintiff remains employed with the Plymouth Post Office. Plaintiff's husband David Mullins was transferred from the Plymouth Post Office in January of 2002.

Despite her continued employment with the Plymouth Post Office, Plaintiff continued to pursue her Complaint with the EEO. On August 4, 2004, Plaintiff Diane Mullins filed the present action against Defendant John Potter, Postmaster General of the United States Postal Service, alleging marital discrimination under Michigan's Elliot Larsen Civil Rights Act and alleging a Title VII claim of retaliation. *See* Complaint. Plaintiff has since agreed to dismiss her claim of marital discrimination.[2] Accordingly, the only claim before the Court is Plaintiff's Title VII claim of retaliation.

### III. LEGAL STANDARD

**A. Motion to Dismiss**

Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine

---

[2] Defendant's Motion alleged that the Court did not have subject matter jurisdiction over Plaintiff's marital discrimination count. *See* Defendant's Motion, at 7. By Plaintiff's response brief, Plaintiff agreed to dismiss this count from her Complaint. *See* Plaintiff's Response, at 6.

whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Penny/Ohlmann/Niemann, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005).

**B. Motion for Summary Judgment**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See*

*Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

### A. *Prima Facie* Case of Title VII Retaliation

To establish a prima facie case of Title VII retaliation, a plaintiff must prove that: (1) plaintiff engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

### B. Plaintiff Satisfies Prongs 1 and 2

Plaintiff satisfies the first two prongs of a retaliation claim because making an EEO complaint is a protected activity under Title VII and because Post Office supervisor Deborah Darcy knew of Plaintiff's EEO complaint.  *See* Plaintiff's Brief, Exhibit 2.  As explained in the following sections, however, Plaintiff has failed to satisfy prong three and accordingly cannot make out a *prima facie* case for Title VII retaliation.

### C. Plaintiff Cannot Satisfy Prong 3

#### 1. No Adverse Employment Action

Plaintiff alleges that she suffered an adverse employment action when the Post Office issued a baseless removal notice and refused to restore her to the 204(B) position.  In order to establish an adverse employment action, a plaintiff must show:

> a significant change in her employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, a significant

change in benefits, or other factors unique to her particular situation.

*Akers v. Alvey*, 338 F.3d 491, 497-98 (6th Cir. 2003) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir.2000)).  The Court finds that the Post Office's actions in this case do not constitute an adverse employment action.

Though removing Plaintiff certainly would have constituted an adverse employment action, the Post Office's removal notice was withdrawn before it ever went into effect.  Furthermore, Plaintiff remains employed with the Plymouth Post Office to this day.  The mere issuance of a notice of an action that never was effected cannot be considered an adverse employment action.

Next, the Post Office's decision not to restore Plaintiff to her 204(B) position should not be considered an adverse employment action.  It is undisputed that 204(B) positions are temporary positions and that sometimes Plaintiff served as a 204(B) for just a few days, and other times for a period of months.  *See* Plaintiff's Brief, at 2; *see also* Plaintiff's Brief, Exhibit 1, at 29.  In addition, the Post Office offered Plaintiff the option to work as a 204(B) at the Ann Arbor Post Office or even at the Post Office in her hometown of Livonia.  Plaintiff chose not accept these transfers and to continue working in Plymouth.  The Court does not consider the Post Office's decision not to assign Plaintiff as a 204(B) supervisor at the Plymouth Post Office to be an adverse employment action.

Lastly, even if Plaintiff could somehow show an adverse employment action, the Post Office's decision to transfer Plaintiff from her 204(B) position cannot be said to be in retaliation for Plaintiff's EEO complaint.  Plaintiff was transferred from her 204(B) position on October 6, 2001. Plaintiff did not file her EEO complaint against Darcy and Oziemski until October 15, 2001.  In other words, Defendant removed Plaintiff from her 204(B) position ***before*** Plaintiff filed her EEO

complaint. It is therefore impossible for Plaintiff to show that Defendant's action was in retaliation to Plaintiff's EEO complaint.

### 2. No Retaliatory Harassment

Though not included in her Complaint, Plaintiff's Brief also alleges that she suffered severe and pervasive harassment in retaliation for filing her EEO complaint. Plaintiff alleges that this harassment included: (1) the issuance of a baseless removal notice, (2) the Post Office's failure to restore her to her 204(B) position, and (3) the filing of a specious sexual harassment claim against her by Union Steward Donald Oziemski. *See* Plaintiff's Brief, at 7.

In order to constitute retaliatory harassment, "the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Akers v. Alvey*, 338 F.3d at 498 (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)). The Court finds that Plaintiff's allegations fail to establish a *prima facie* case for severe and pervasive retaliatory harassment.

First, the Court considers the Post Office's issuance of the removal notice to Plaintiff on January 2, 2002. Though it is ***possible*** that this action was in retaliation for Plaintiff's October 15, 2001 EEO complaint, the evidence does not support this inference. The Post Office has asserted that the removal notice was issued because of the discrepancy on Plaintiff's job application. When the discrepancy was resolved, the Post Office withdrew the removal notice and Plaintiff remains employed with the Post Office today.

For support, Plaintiff relies on Union Steward Kevin Osak's deposition. Osak explained that the Post Office's action appeared to him to be retaliatory harassment. Osak's deposition, however, supplies no personal knowledge or evidence of retaliation, but merely offers his speculation that

"[t]here had to be something else going on." Plaintiff's Brief, Exhibit 5, at 33. In addition, and regardless of the truth of Osak's speculation, the Court finds that the Post Office's issuance of a removal notice, and later withdrawal of this notice, cannot be considered either severe or pervasive harassment.

Next, the Court considers Plaintiff's allegation that the Post Office's refusal to promote her to a 204(B) position at the Plymouth Post Office constituted retaliatory harassment. The Court once again notes that the Post Office removed Plaintiff from her 204(B) position ***before*** Plaintiff filed her EEO complaint. Additionally, the Post Office offered Plaintiff the option to work as a 204(B) at either the Ann Arbor Post Office or the Livonia Post Office. Plaintiff declined these transfers. The Court finds that these actions by the Post Office did not constitute severe and pervasive harassment.

Lastly, the Court considers Plaintiff's allegation that co-worker Donald Oziemski's EEO complaint constituted retaliatory harassment. Plaintiff has asserted that Union Steward Donald Oziemski filed a sexual harassment complaint against her in the Spring of 2002. *See* Plaintiff's Brief, at 4. It is unclear to the Court why Oziemski filed the complaint, or whether the complaint may have been a form of harassment. *See* Plaintiff's Brief, Exhibit 5, Deposition of Kevin Osak at 40. Nevertheless, though the Sixth Circuit has held that retaliatory harassment by a supervisor can be actionable under Title VII, it has not recognized retaliatory harassment by a co-worker as a valid cause of action. Accordingly, the Post Office cannot be held responsible for Oziemski's EEO complaint.

For these reasons, the Court finds that Plaintiff's allegations fail to adequately allege a *prima facie* case of retaliatory harassment.

## V. CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is HEREBY GRANTED.

IT IS SO ORDERED.


                                  s/Lawrence P. Zatkoff
                                  LAWRENCE P. ZATKOFF
                                  UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 28, 2005.


                                  s/Marie E. Verlinde
                                  Case Manager
                                  (810) 984-3290